### In re GOLDMAN et al.

#### (District Court, E. D. Pennsylvania. March 27, 1917.)

#### No. 4892.

1. BANKRUPTCY ⬅224—POWERS OF REFEREE—COMPROMISE WITH BANKRUPT—ORDER OF COURT.

Bankr. Act July 1, 1898, c. 541, § 38, 30 Stat. 555 (Comp. St. 1913, § 9622), confers on referees jurisdiction to perform such part of the duties, except as to questions arising out of the applications of bankrupts for composition or discharges, as are by the act conferred on courts of bankruptcy, and as shall be prescribed by rules or orders of the courts of their respective districts. Section 2 (Comp. St. 1913, § 9586) empowers courts of bankruptcy to cause the estates of bankrupts to be collected, reduced to money, and distributed, and to determine controversies in relation thereto, and to make such orders and judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of the act, with a proviso that nothing therein shall be construed to deprive a court of bankruptcy of any power it would possess, were certain powers not therein enumerated. Section 47a (2) (Comp. St. 1913, § 9631), provides that the trustee shall collect and reduce to money the property of the estates under the direction of the court, and close up the estate as expeditiously as is compatible with the best interests of the parties. *Held*, that these sections empower the referee, when it is for the best interests of the estate and will prevent undue delay in settlement because of the impossibility of proving the bankrupt's ability to comply with an order compelling the bankrupt to pay to the trustee a sum which it was found he was concealing from the trustee, to approve a compromise between the trustee and the bankrupt, whereby the trustee accepted a less amount than that specified in the order.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 383.]

2. BANKRUPTCY ⬅228—REVIEW—QUESTIONS PRESENTED—JURISDICTION.

Under General Order in Bankruptcy No. 27 (89 Fed. xi, 32 C. C. A. xxvii), providing that, when a bankrupt, creditor, trustee, or other person desires a review by the judge of any order made by the referee, he shall file with the referee his petition therefor, setting out the error complained of, and the referee shall forthwith certify to the judge the question presented, a summary of the evidence relating thereto, and the finding and order of the referee, a petition to review an order of the referee approving a compromise with the bankrupt, which does not attack the jurisdiction of the referee to make the order, does not entitle petitioner to attack the referee's jurisdiction.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 387.]

3. BANKRUPTCY ⬅228—REVIEW—FINDINGS OF REFEREE—CONFLICTING EVIDENCE.

Conclusions of the referee in bankruptcy upon conflicting evidence are entitled to the same presumption of correctness as those of a judge.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 387.]

In Bankruptcy. In the matter of Aaron Goldman and another, individually and as copartners trading as Goldman Bros., bankrupts. On petition by J. Blumenthal, a creditor, to review an order of the referee authorizing the trustee to compromise a certain claim due to him from the bankrupts. Petition dismissed, and order affirmed.

Samuel Feldman, of Philadelphia, Pa., for petitioners.

Abram Peterzell and Jacob I. Weinstein, both of Philadelphia, Pa., for trustee.

BRADFORD, District Judge (specially presiding). This is a petition by J. Blumenthal, a creditor of Aaron Goldman and Frank Goldman, trading as Goldman Brothers, bankrupts, for the review of an order made by the referee December 21, 1916, purporting to authorize the trustee in bankruptcy to compromise a certain claim of $3,092.20 due to him from the bankrupts, and also a certain claim of $40 due to him from the above named Aaron Goldman, by the payment to the trustee of the sum of $1,500 in full settlement of the two claims above mentioned. The portion of the referee's order of December 21, 1916, relative to a compromise of the claims is as follows:

"It is further ordered and decreed that William L. Moise, trustee of the estate of Aaron Goldman and Frank Goldman, individually and as co-partners trading as Goldman Brothers, bankrupts, be and he hereby is authorized and empowered to settle and compromise for the sum of fifteen hundred dollars, payable on or before December 15, 1916, the orders now pending by him against the said Aaron Goldman and Frank Goldman, individually and as co-partners trading as Goldman Brothers, bankrupts, in the sum of $3,092.20, and the order against the said Aaron Goldman in the sum of $40.00, both of which orders were entered by the District Court of the United States for the Eastern District of Pennsylvania, on July 1st, 1916, and upon the payment of the said sum of $1,500 on or before December 15th, 1916, to make, execute and deliver to the said Aaron Goldman and Frank Goldman, individually and as co-partners trading as Goldman Brothers, all orders, releases and other papers necessary for the proper consummation of the said settlement."

In the petition for review Blumenthal alleges error in the above order of the referee on the following grounds only:

"1. The learned referee erred in granting said petition and making said order in that the testimony adduced at the various meetings held in these proceedings clearly established the fact that the bankrupts had been guilty of numerous flagrant and fraudulent acts, all of which same were perpetrated with the view and purpose of defrauding their creditors.

"2. The original order of the referee as confirmed by the United States District Court for the payment by the above-named bankrupts to the trustee of the sum of three thousand dollars ($3,000) was just, proper, legal, in strict accord with the testimony adduced, and in no manner a hardship upon the bankrupts.

"3. The aforesaid order as made by the referee and confirmed by the United States District Court was in no manner unfair to the bankrupts; and your petitioner is of opinion that said bankrupts were able at the time of the making of said order and are able at this date to comply with the terms thereof.

"4. Your petitioner is of opinion and believes that the above-named bankrupts can comply in full with the terms and conditions of the order as originally made, and that a compromise of said order for one-half of that amount merely serves to deprive the estate and the creditors thereof of the sum of fifteen hundred dollars ($1,500) to which they are justly and legally entitled, and which the bankrupts should justly and legally pay."

It appears from the certificate of the referee that the trustee filed a petition setting forth that an order was entered July 1, 1916, directing the bankrupts to pay to the trustee the two sums of $3,092.20 and $40, found to be property belonging to the bankrupt estate, and concealed by the bankrupts; that he, the trustee, was unable to prove the possession or control by the bankrupts of said moneys; that the bankrupts had failed to comply with said order, and that it would be necessary for him to make such proof in order to have the bank-

rupts punished for contempt; and that an offer had been made to the trustee to settle his said claims for the sum of $1,500. The trustee prayed for leave to effect a settlement for that sum. It further appears from the certificate that upon the receipt of the above petition of the trustee the referee called a meeting of the creditors, giving ten days' notice thereof; that the meeting was held October 27, 1916, and was attended by the trustee, his counsel, and three creditors; that after considering the petition it appeared that the three creditors objected to the proposed compromise and stated it to be their honest belief that the bankrupts were well able to pay the whole sum; that after considerable discussion as disclosed in the minutes of the proceedings returned with the certificate an adjournment was had, and another meeting was held November 8, 1916, at which the three creditors above referred to again pressed their objection and after the hearing the referee refused authority to the trustee to effect the proposed compromise; that a short time thereafter the trustee advised the referee that the creditors who had objected to the proposed compromise had further investigated the matter and had come to the conclusion that the settlement was for the best interests of the estate, and requested the referee to call another meeting of the creditors; that thereupon notices were mailed to the creditors and a meeting was held December 21, 1916, at which the trustee again presented his petition asking for authority to compromise the claims; that at the last meeting two of the three creditors who had objected to the proposed compromise were present and voted in favor of it, together with other creditors then present; that further discussion was had and it appeared that Blumenthal, who has a claim of $2,309.34, was the only one who objected; that the referee was finally of the opinion that the proposed settlement would be for the best interests of the creditors and accordingly made the order of December 21, 1916; that it appeared that the claims of unsecured creditors, 37 in number and $10,000 in amount, have been proved against the estate of the bankrupts, and that at the meeting of December 21, 1916, approximately "half" of the creditors were present or represented by counsel; that the referee considered the petition for leave to compromise as a matter within his discretion and in entering the order of December 21, 1916, had in mind court rulings that commitment for contempt for failure to comply with an order for the payment of money to the bankrupt estate would not be made in the absence of proof of the present ability of the bankrupts to comply with it; and that he had in mind statements made by the counsel for the trustee that he feared that the latter would be unable to prove such ability.

[1] It does not appear that either in the petition for review or at any time during the proceeding before the referee any question was raised as to the jurisdiction or authority of the referee under the bankruptcy act, in the exercise of an honest discretion, as to what would be most for the interests of the creditors, to authorize the acceptance of the sum of $1,500 in satisfaction of the whole amount due from the bankrupts. In the brief of argument submitted to this court on the part of Blumenthal a point has been made for the first time that

"the trustee is not given the power under the bankruptcy act to compromise court orders"; and reference is made to section 27a (Comp. St. 1913, § 9611) which provides that "the trustee may, with the approval of the court, compromise any controversy arising in the administration of the estate upon such terms as he may deem for the best interests of the estate." The argument is made that no controversy exists in the sense of the term as used in section 27a, and that consequently the referee was without authority to make the order complained of. It may be a serious question whether the term "controversy" has any application to a voluntary offer by the bankrupts to pay a sum of money to the trustee in satisfaction of a larger amount due from the bankrupts, the trustee being willing to accept such voluntary payment in full satisfaction. In section 26 (Comp. St. 1913, § 9610) provision is made that "the trustee may pursuant to the direction of the court, submit to arbitration any controversy arising in the settlement of the estate" and that "the written finding of the arbitrators, or a majority of them, as to the issues presented, may be filed in the court and shall have like force and effect as the verdict of a jury." Possibly an inference justly may be drawn from a consideration of the language employed in these two sections that the term was not intended to apply to such an amicable adjustment as that proposed. On the assumption that authority is not conferred by section 27a, it by no means follows that the order of the referee was not authorized under other provisions of the bankruptcy act. Section 38 confers upon referees jurisdiction to "perform such part of the duties, except as to questions arising out of the applications of bankrupts for composition or discharges, as are by this act conferred on courts of bankruptcy and as shall be prescribed by rules or orders of the courts of bankruptcy of their respective districts, except as herein otherwise provided." Section 2 provides that the courts of bankruptcy shall have power and authority to "cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto" except as in the act otherwise provided, and to "make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this act." Section 2 further provides that nothing therein contained "shall be construed to deprive a court of bankruptcy of any power it would possess were certain specific powers not herein enumerated." And section 47a (2) provides that trustees shall "collect and reduce to money the property of the estates for which they are trustees, under the direction of the court, and close up the estate as expeditiously as is compatible with the best interests of the parties in interest." If it be true, as was the opinion of the referee, that it was for the best interests of the creditors that the sum of $1,500 should be received in settlement of a larger sum, which could not be collected from the bankrupts by adverse proceedings, I am unable to reach the conclusion that under the broad provisions of the bankruptcy act to which attention has just been drawn, and the liberal construction to which those provisions are entitled for the furtherance of the beneficent purposes of the act, the referee was

without authority to secure for the benefit of the creditors the sum of $1,500 which probably would have been totally lost in the event of a rejection of the offer. Nor can I believe that it would be proper or within the contemplation of the act to keep the bankrupt estate open during an indefinite period in the hope of receiving payment of a claim in a case where such payment is only problematical. Not only is authority given to "make such orders * * * as may be necessary for the enforcement of the provisions of this act," but it is made the duty of trustees to "close up the estate as expeditiously as is compatible with the best interests of the parties in interest."

[2] Further, the petitioner for review is not in a position to contend that under the provisions of the bankruptcy act the referee was without authority to make the order of December 21, 1916. General Order in Bankruptcy No. 27 (89 Fed. xi, 32 C. C. A. xxvii) is as follows:

"When a bankrupt, creditor, trustee, or other person shall desire a review by the judge of any order made by the referee, he shall file with the referee his petition therefor, setting out the error complained of; and the referee shall forthwith certify to the judge the question presented, a summary of the evidence relating thereto, and the finding and order of the referee thereon."

[3] This rule has not been complied with so far as any supposed lack of jurisdiction or authority on the part of the referee is concerned. The only questions raised by the specifications of error are those of fact involving discretion on which the referee has passed after careful consideration of all the circumstances, and I find nothing in the proceedings as certified by the referee to require or justify a reversal of the order in question. The same presumption of correctness applies to a referee's conclusions upon conflicting evidence as is applicable to those of the judge.

The petition for review is dismissed and the order to which it relates is hereby approved and confirmed.