## UNITED STATES v. MITCHELL et al.

(District Court, S. D. Texas, Houston Division. April 1, 1926.)

No. 2300.

1. Searches and seizures ⬅3.

Frame lean-to built at back of defendant's residence and attached thereto by carpentry, but having no door opening into dwelling, *held* not part thereof, as respected search.

2. Intoxicating liquors ⬅249—Mere presence of mash, whisky, and still in private residence does not deprive it of its character as such.

Mere presence of mash, whisky, and still in private residence does not deprive it of character of private dwelling, as respects right of search, though such facts may, with other evidence, support inference that place is used for purpose of sale, or for manufacture for sale.

3. Intoxicating liquors ⬅249—Mere use of lean-to having dirt floor and crowded with distillery equipment as sleeping place for children would not make it private dwelling.

Mere fact that some of defendant's children may have slept in lean-to at back of dwelling, which had only a dirt floor and was crowded with distillery equipment, *held* not to make it a private dwelling used and occupied as such, as respected right of search.

At Law. Motion by Gaitano Mitchell and others to quash search warrant and suppress evidence as illegally obtained under it. Motion overruled.

H. M. Holden, U. S. Dist. Atty., of Houston, Tex.

Stanley Beard, of Houston, Tex., for defendants.

HUTCHESON, District Judge. This is a motion to quash a search warrant and suppress evidence as obtained illegally under it. The affidavit states:

"Had reliable information on different occasions that whisky is being manufactured at the following described premises: A large, unpainted building, being used partly as a barn and partly as a residence, with a new unpainted building near or attached to the rear end of same. * * * Affiant states he was near these premises on December 19, 1925, and could detect a strong odor of mash · coming from the same, being the premises of unknown parties, and being situated in the county of Harris and state of Texas."

At the hearing on the motion it was proven that defendant had a residence, to which was attached a frame addition at the back, built subsequently to the main building, and having for one of its walls the rear wall of the dwelling house; the dwelling being floored, and the addition having a dirt floor. This addition had two doors, neither of which opened into the dwelling house, and when the officers made the search they did not go into or pass through the residence proper.

Defendant testified that there were loose boards in the wall between his dwelling proper and this lean-to, and that some of his children slept there at night, going into it by

raising these loose boards. The government witnesses testified that they did not see any loose boards on the side where the defendant claimed they were. It was admitted that the room was practically filled with the paraphernalia found there, as shown by the return on the search warrant: "1 75-gal. still, coil, cooler, triple condenser, 28 fermenters 1,300 gallons mash, 1 quart whisky, 5 10-gallon kegs, 6 5-gallon bottles, 6 1-gallon bottles, 1 tub, 3 buckets, ½ gallon coloring, 1 hydrometer, 10 gallons coal oil, 1 5-burner gas stove, 2 half barrels, 100 ft. hose, 500-gallon water tank, 100 lbs. sugar, 200 lbs. wheat, 2 lanterns, 1 funnel." And the evidence leaves no doubt that as far as preparation, equipment and intention go, the defendant was running a distillery.

It is the contention of defendant: (1) That the lean-to was a part of defendant's residence, because attached to it by carpentry. (2) That it was a part of his private dwelling, because through the contrivance of the loose boards he used it as sleeping quarters for some of his children, who took pallets in at night and brought them out by day. [1] The government replies that defendant's first contention is foreclosed in this circuit by the opinion in the Monaghan Case, and I agree with their contention (see Monaghan v. U. S., 5 F.[2d] 424) and that his second contention is without merit: (a) Because the evidence of the physical facts, the crowded condition of the room, the necessarily overpowering odor of the mash, which would make sleeping impossible, and the entire absence of the evidence of use for sleeping purposes, established that defendant's claim in this regard is not true; (b) because, even if true, the mere use of the room for sleeping, as testified, would not make it a private dwelling used and occupied as such; and (c) because, even if it be considered a private dwelling, it loses the exemption from search when used for distillery purposes, as the evidence shows.

[2] Taking up these contentions in reverse order, I cannot agree with the government upon the broad contention made by them that the mere presence of mash, whisky, and a still in a private residence deprives it of the character of a private dwelling, though these facts may, when considered with the other evidence, be sufficient to support the inference that the place is being used for the purpose of sale, or for the business of manufacture for sale. Monaghan v. U. S. (C. C. A.) 5 F.(2d) 424; In re Mobile (D. C.) 278 F. 949; U. S. v. Goodwin (D. C.) 1 F.

(2d) 36–38; Temperani v. U. S. (C. C. A.) 299 F. 365.

[3] Whether the precise facts of this case satisfy the requirements of the proof necessary to sustain an issue of this kind, it is not necessary for me to decide; for I think it clear that point (b) is well taken, and, if true, the fact that children may make their beds on the ground in the mash house, like pigs in a sty, would have no efficacy to convert this place into a private dwelling, any more than if the defendant let them sleep in a sty or any other of his outhouses, for it is the dominant, and not the incidental, use of a place that determines its character as a dwelling. Besides, I do not believe, though the defendant swears to it, that he lets his children sleep in such a place. I think, rather, the exigencies of his legal situation have driven his testimony too far.

The motion must be overruled.